**United States Department of Justice**

United States Attorney
Southern District of West Virginia

Robert C. Byrd United States Courthouse
300 Virginia Street, East
Suite 4000
Charleston, WV 25301
1-800-659-8726

Mailing Address
Post Office Box 1713
Charleston, WV 25326
304-345-2200
FAX: 304-347-5104

FILED
MAY - 3 2018
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

April 2, 2018

Mychal S. Schulz, Attorney
Babst Calland Attorneys at Law
300 Summers Street
Suite 1000
Charleston, West Virginia 25301

      Re:    United States v. Executive Air Terminal, Inc.

Dear Mr. Schulz:

    This will confirm our conversations with regard to your client, Executive Air Terminal, Inc. (hereinafter "Executive Air"). As a result of these conversations, it is agreed by and between the United States and Executive Air as follows:

    1.    **CHARGING AGREEMENT.** Executive Air agrees to waive any right it may have to be charged by indictment and will consent to the filing of a single-count information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

    2.    **RESOLUTION OF CHARGES.** Executive Air will plead guilty to the said information, to a violation of 42 U.S.C. § 6928(d)(2)(A) and 18 U.S.C. § 2.

    3.    **MAXIMUM POTENTIAL PENALTY.** The maximum penalty to which Executive Air will be exposed by virtue of this guilty plea is as follows:

    (a)    A fine of up to $50,000 per day, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, or $500,000 under Alternative Fines Act, whichever is greater;

                                                               Defendant's Initials

Mychal S. Schulz, Attorney
April 2, 2018     Re: Executive Air Terminal, Inc.
Page 2


    (b)   A five-year term of probation;

    (c)   A mandatory special assessment of $400 pursuant to 18 U.S.C. § 3013; and

    (d)   Restitution pursuant to 3663 and 3664, or as otherwise set forth in this plea agreement.

    4.   **SPECIAL ASSESSMENT.** Prior to the entry of a plea pursuant to this plea agreement, Executive Air will tender a check or money order to the Clerk of the United States District Court for $400, which check or money order shall indicate on its face the name of defendant and the case number. The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing. Executive Air will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Executive Air fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Executive Air.

    5.   **PAYMENT OF MONETARY PENALTIES.** Executive Air agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States. So long as the monetary penalties are ordered to be due and payable in full immediately, Executive Air further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

                                                                           Defendant's Initials

Mychal S. Schulz, Attorney
April 2, 2018                    Re: Executive Air Terminal, Inc.
Page 3

6. **COOPERATION.** Executive Air will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will fully and truthfully cooperate with the United States in its ongoing criminal investigation(s) of individuals, including but not limited to investigation of any individual who is or may have been employed by or affiliated with Executive Air. Executive Air will produce records, provide factual information, and will, upon request of the United States, use its best efforts to secure the cooperation of its current (as of the date of execution of this agreement by Executive Air) directors, officers, and employees for interviews and testimony before a grand jury, trial or other federal judicial proceeding. In complying with this provision, Executive Air may have counsel present except before a grand jury.

7. **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Executive Air, and except as expressly provided for in paragraph 9 below, nothing contained in any statement or testimony provided by him pursuant to this agreement, or any evidence developed therefrom, will be used against him, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

8. **LIMITATIONS ON IMMUNITY.** Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Executive Air for any violations of federal or state laws. The United States reserves the right to prosecute Executive Air for perjury or false statement if such a situation should occur pursuant to this agreement.

9. **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Executive Air stipulate and agree that the facts comprising the offense of conviction and relevant conduct include the facts outlined in the "Stipulation of Facts," a copy

_____
Defendant's Initials

Mychal S. Schulz, Attorney
April 2, 2018                  Re: Executive Air Terminal, Inc.
Page 4


of which is attached hereto as "Plea Agreement Exhibit B."

    Executive Air agrees that if it withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by Executive Air, and Executive Aer is subsequently tried for its conduct alleged in the information and other relevant conduct, as more specifically described in the Stipulation of Facts, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Executive Air or of any of its witnesses, or in rebuttal of any testimony introduced by Executive Air or on its behalf. Executive Air knowingly and voluntarily waives, see <u>United States v. Mezzanatto</u>, 513 U.S. 196 (1995), any right Executive Air has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

    The United States and Executive Air understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

    10. **AGREEMENT ON SENTENCING GUIDELINES**. Based on the foregoing Stipulation of Facts, the United States and Executive Air agree that the following provisions of the United States Sentencing Guidelines apply to this case.

    <u>USSG §2Q1.2</u>

| | |
|---|---|
| Base offense level (§2Q1.2(a)) | 8 |
| Storage of Hazardous Waste Without a Permit (§2Q1.2(b)(4)) | 4 |

                                            Defendant's
                                              Initials

Mychal S. Schulz, Attorney
April 2, 2018             Re: Executive Air Terminal, Inc.
Page 5

    Adjusted offense level                           12

The United States and Executive Air acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range.

11. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Executive Air knowingly and voluntarily waives the right to seek appellate review of its conviction and of any fine ~~or term of supervised release~~ imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U.S.C. § 3742(a), except that Executive Air may appeal any sentence that exceeds the maximum penalty prescribed by statute. Executive Air also knowingly and voluntarily waives any right to seek appellate review of any claim or argument that (1) the statues of conviction, 42 U.S.C. § 6928(d)(2)(A) and 18 U.S.C. § 2 are unconstitutional, and (2) Executive Air's conduct set forth in the Stipulation of Facts (Plea Agreement Exhibit B) does not fall within the scope of 42 U.S.C. § 6928(d)(2)(A) and 18 U.S.C. § 2.

The United States also agrees to waive its right to appeal any fine or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U.S.C. § 3742(b), except that the United States may appeal any sentence that is below the minimum penalty, if any, prescribed by statute.

Executive Air also knowingly and voluntarily waives the right to challenge its guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

                                                                                  Defendant's
                                                                                  Initials

Mychal S. Schulz, Attorney  
April 2, 2018                    Re: Executive Air Terminal, Inc.  
Page 6

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

12. **WAIVER OF FOIA AND PRIVACY RIGHT.** Executive Air knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

13. **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

(a) Inform the Probation Office and the Court of all relevant facts and conduct;

(b) Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

(c) Respond to questions raised by the Court;

(d) Correct inaccuracies or inadequacies in the presentence report;

(e) Respond to statements made to the Court by or on behalf of Executive Air;

(f) Advise the Court concerning the nature and extent of Executive Air's cooperation; and

(g) Address the Court regarding the issue of Executive Air's acceptance of responsibility.

Defendant's Initials

Mychal S. Schulz, Attorney
April 2, 2018  Re: Executive Air Terminal, Inc.
Page 7

    14. **VOIDING OF AGREEMENT.** If either the United States or Executive Air violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

    15. **ENTIRETY OF AGREEMENT.** This written agreement constitutes the entire agreement between the United States and Executive Air in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Executive Air in any Court other than the United States District Court for the Southern District of West Virginia.

    16. **CORPORATE AUTHORIZATION.** Executive Air Terminal, Inc. will provide to the United States written evidence in the form a notarized statement that Brian Scott Miller is authorized to plead guilty to the felony charge set forth in the Information, and to enter into and comply with all provisions of this agreement. The statement shall also certify that all corporate formalities have been observed for said authorization.

    Acknowledged and agreed to on behalf of the United States:

                      MICHAEL B. STUART
                      United States Attorney

By: *[signature]*

                      ERIK S. GOES
                      Assistant United States Attorney

*[signature]*

                      PERRY D. MCDANIEL
                      Special Assistant
                      United States Attorney

ESG/smw

                                        *[initials]*
                                        Defendant's
                                        Initials

Mychal S. Schulz, Attorney
April 2, 2018 Re: Executive Air Terminal, Inc.
Page 8

As President of Executive Air Terminal, Inc., authorized to act for and on behalf of Executive Air in executing and entering into this agreement, I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this eight-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement on behalf of Executive Air. I further acknowledge that Executive Air's attorney has advised Executive Air and me of Executive Air's rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to Executive Air other than those in this agreement, and that no one has threatened Executive Air or forced Executive Air in any way to enter into this agreement. Finally, I am satisfied with the representation of Executive Air's attorney in this matter.

_____   _____
Executive Air Terminal, Inc.                    Date Signed
Defendant
By: Brian Scott Miller, President
    Executive Air Terminal, Inc.

*[Signed: Brian S. Miller]*  *[Dated: April 5, 2018]*

_____   _____
Mychal S. Schulz, Attorney                      Date Signed
Counsel for Defendant

*[Signed: Mychal S. Schulz]*  *[Dated: April 5, 2018]*

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA**

v.                    CRIMINAL NO. _____
                      42 U.S.C. § 6928(d)(2)(A)
                      18 U.S.C. § 2

**EXECUTIVE AIR TERMINAL, INC.**

# I N F O R M A T I O N

(Storage of Hazardous Waste Without a Permit)

The United States Attorney Charges:

## Background

At all relevant times:

1. Pursuant to the Resource Conservation and Recovery Act ("RCRA"), the United States Environmental Protection Agency ("EPA") and the states regulated various types of solid wastes classified as hazardous wastes. RCRA made it a crime for a person to knowingly treat, store or dispose of hazardous waste without a permit.

2. The EPA has authorized the State of West Virginia, specifically the West Virginia Department of Environmental Protection ("WV DEP"), to administer a hazardous waste program in

PLEA AGREEMENT EXHIBIT "A"

lieu of a federal program. The EPA retained enforcement authority to enforce RCRA in West Virginia.

3. Brian Scott Miller was the owner and president of EXECUTIVE AIR TERMINAL, INC. ("EXECUTIVE AIR").

4. Defendant EXECUTIVE AIR was a West Virginia corporation that served as the fixed base operator for Yeager Airport in Charleston, West Virginia. Specifically, defendant EXECUTIVE AIR provided aeronautical services, including fueling, hangaring, and other services for private and commercial airplanes at Yeager Airport in Charleston, West Virginia.

5. Defendant EXECUTIVE AIR generated hazardous waste in the course of fueling and other services. The hazardous waste was generated during defendant EXECUTIVE AIR's operations by draining and collecting fluids, such as oil, aviation fuels, as well as deicing fluid and other similar fluids. These fluids generally were placed in unmarked 55-gallon drums by Executive Air employees.

6. Defendant EXECUTIVE AIR was allowed, pursuant to the RCRA, to store up to 1000 kilograms of hazardous waste without obtaining a RCRA hazardous waste storage permit from the WV DEP. Defendant EXECUTIVE AIR needed to obtain a RCRA storage permit once the amount of stored hazardous waste exceeded 1000 kilograms.

PLEA AGREEMENT EXHIBIT "A"

7. By September 2015, defendant EXECUTIVE AIR had accumulated thirty-seven 55-gallon drums containing waste fluids. Twenty-seven of the drums contained hazardous waste. The twenty-seven drums weighed approximately 3674 kilograms.

8. Defendant EXECUTIVE AIR did not have a permit to store hazardous waste at its Yeager Airport facility.

## The RCRA Violation

9. On or about September 17, 2015, at or near Charleston, Kanawha County, West Virginia, in the Southern District of West Virginia and elsewhere, defendant EXECUTIVE AIR, aided and abetted by others known to the United States Attorney, knowingly stored, and caused the storage of hazardous waste at the Executive Air facility at Yeager Airport without a permit as required by the RCRA, until the drums were moved off site in the early morning hours of September 17 and 18, 2015.

PLEA AGREEMENT EXHIBIT "A"

In violation of Title 42, United States Code, Section 6928(d)(2)(A), and Title 18, United States Code, Section 2.

UNITED STATES OF AMERICA

MICHAEL B. STUART
United States Attorney

_____
ERIK S. GOES
Assistant United States Attorney

_____
PERRY D. MCDANIEL
Special Assistant United States Attorney

PLEA AGREEMENT EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON**

**UNITED STATES OF AMERICA**

v.                                    CRIMINAL NO. _____

**EXECUTIVE AIR TERMINAL, INC.**

## STIPULATION OF FACTS

The United States and Executive Air Terminal, Inc. (hereinafter "Executive Air") stipulate and agree that the facts comprising the offenses of conviction in the Information in the Southern District of West Virginia, and the relevant conduct for those offenses, include the following:

1. Mr. Miller is the owner and president of Executive Air Terminal, Inc. ("Executive Air"). Mr. Miller was responsible for all operations at Executive Air, including the handling of hazardous waste.

2. Executive Air is the fixed base operator at Yeager Airport in Charleston, West Virginia. As a fixed base operator, Executive Air had a contract with Yeager Airport in Charleston, West Virginia to provide aeronautical services, including fueling, hangaring, and other services. Executive Air provided fueling and other services for private and commercial airplanes at Yeager Airport.

3. In the course of its duties as the fixed base operator, Executive Air generated hazardous waste. The hazardous wastes generated included aviation gas, jet fuel, and mixtures containing aviation fuels with used oil and other fluids. Pursuant to federal law, Executive Air registered with the State of West Virginia to generate small quantities of hazardous waste, and was "conditionally exempt" from regulation under the federal Resource Conservation and Recovery Act ("RCRA"). If Executive Air violated certain conditions for being "conditionally exempt" under RCRA, it was required to get a permit for the storage of hazardous waste. One such condition was a prohibition on the storage of more than 1000 kilograms of hazardous waste.

4. By September 2015, Executive Air had, through its employees actions, accumulated thirty-seven 55-gallon drums filled with waste fluids. Executive Air accumulated the waste fluids in

**PLEA AGREEMENT EXHIBIT "B"**

drums for some unknown time prior to September 2015. Executive Air did not label the drums with the contents of the waste or the date that waste liquids were initially stored in each drum.

    5.    Neither Mr. Miller nor Executive Air had a permit to treat, store, and dispose of hazardous waste at the Executive Air facility at Yeager Airport.

    6.    Mr. Miller knew the drums had been stored at the Executive Air facility. Mr. Miller knew that the waste drums contained used oil, aviation gas, jet fuel, or mixtures of these fluids.

    7.    In the first two weeks of September 2015, Mr. Miller directed an employee to dispose of the drums. Despite having hired a licensed hazardous waste hauler in 2006-2008, Miller did not have the drums transported in September 2015 from Executive Air by a licensed hazardous waste hauler. Instead, in compliance with Mr. Miller's request to dispose of the drums, the employee arranged with a former Executive Air employee to transport the drums off site to the former employee's rural property near Charleston, West Virginia. The drums were transported in several truckloads after midnight and in the early morning hours of September 17-18, 2015. The employee and former employee were not licensed to transport hazardous waste. Executive Air transported the drums without a hazardous waste manifest. The former employee did not have a permit to treat, store or dispose of hazardous waste.

    8.    Mr. Miller subsequently directed his employee to arrange for the drums to be moved from the former employee's property. The employee contacted a Charleston sewage hauler who agreed to transport the drums from the former employee's property. The sewage hauler transported the drums to his business facility in Charleston, West Virginia. The sewage hauler was not licensed to transport hazardous waste. The drums were transported without a hazardous waste manifest. The sewage hauler did not have a permit to treat, store or dispose of hazardous waste.

    9.    The drums were discovered on November 4, 2015, at the sewage hauler's facility by the United States Environmental Protection Agency ("EPA") Criminal Investigation Division. The West Virginia Department of Environmental Protection ("WV DEP") Homeland Security Emergency Response Unit transported the drums to a facility operated by that agency. The WVDEP facility had a permit to store hazardous waste. The contents of the drums were sampled by the EPA and a third-party contractor hired by Executive Air. The analysis of the samples demonstrated that the contents

**PLEA AGREEMENT EXHIBIT "B"**

of twenty-seven (27) drums constituted hazardous waste pursuant to RCRA. Specifically, all twenty-seven drums were hazardous for ignitability, toxicity, or both. The twenty-seven drums weighed approximately 3674.09 kilograms, exceeding the 1000 kilograms RCRA permit exemption.

10. The United States and Executive Air further stipulate that the events constituting the criminal violation in the Information occurred in Kanawha County, West Virginia, which is in the Southern District of West Virginia.

This Stipulation of Facts does not contain each and every fact known to Executive Air and to the United States concerning Executive Air's involvement and the involvement of others in the charges set forth in the Information.

Stipulated and agreed to:

_____     April 5, 2018
EXECUTIVE AIR TERMINAL, INC.     Date
Defendant
By: Brian Scott Miller, President
    Executive Air Terminal, Inc.

_____     April 5, 2018
MYCHAL S. SCHULZ     Date
Counsel for Defendant

_____     4/6/18
ERIK S. GOES     Date
Assistant United States Attorney

_____     4-6-2018
PERRY D. MCDANIEL     Date
Special Assistant United States Attorney

**PLEA AGREEMENT EXHIBIT "B"**
3